RECEIVED
NOV 15 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

Anna Boudreaux                                Civil Action No. 04-541

versus                                        Judge Tucker L. Melançon

Rice Palace, Inc., et al                      Magistrate Judge Mildred E. Methvin

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment on Defendant's Liability for Failure to Provide Cobra Notice and/or Defendants' Bad Faith [Rec. Doc. 25] filed by plaintiff Anna Boudreaux, and an Opposition to Motion for Partial Summary Judgment on Claim for Failure to provide Cobra Notice [Rec. Doc. 31] submitted by defendants Rice Palace, Inc. and Shop Rite, Inc. For the following reasons, plaintiff's Motion will be DENIED.

### I. Factual Background

Defendant Rice Palace, Inc. operates a restaurant and gaming facility that employs in excess of fifty employees. (*Complaint*, ¶ 10). Plaintiff was employed with Rice Palace, Inc. in various capacities from on or about February 5, 2001 until April 12, 2003, when defendant fired plaintiff. (*Complaint*, ¶¶ 11-12). Plaintiff participated in an uninsured group health plan providing health benefits to eligible employees during her employment with defendant. The plan was sponsored through Rice Palace's sister corporation, defendant Shop Rite, Inc.[1]

---

[1] Both Rice Palace and Shop Rite are both closely held Louisiana corporations. Plaintiff claims that the two corporation have intermingled and overlapping business interests. (*Complaint*, ¶ 2).

1

(*Complaint,* ¶ 25). Shop Rite, Inc. serves as the plan administrator as well as the named fiduciary and agent for service of process. *Id.* Plan administration is provided through a third party benefit services manager, Gilsbar, Inc. *Id.*

Throughout the course of her employment, while at work plaintiff experienced disorientation, slurring of speech, dizziness and other physical conditions at work, which plaintiff claims were medically related. (*Complaint,* ¶¶ 22 & 31). At one point, plaintiff was permitted to take two weeks of sick leave to seek medical diagnosis of her problem. (*Complaint,* ¶¶ 22 & 31). Upon returning to work with medical clearance from her treating physician, plaintiff was soon demoted from assistant kitchen manger to dish washer because of the frequent occurrence of the above listed symptoms which inhibited her ability to safely and properly perform her job. (*Complaint,* ¶¶ 22 & 32). Shortly thereafter, she was promoted to line cook, a position still below her former position and pay scale, a position she held briefly before being fired on April 12, 2003. (*Complaint,* ¶¶ 23-24 & 33). Plaintiff alleges that defendant fired her for pre-textual reasons - in order to and for the purpose of interfering with the attainment of rights to which plaintiff would have become entitled under the plan, including the entitlement to medical benefits for plaintiff and her husband. (*Complaint,* ¶¶ 27 & 33). Rice Palace avers that plaintiff's employment was terminated for legitimate, non-discretionary reasons; in spite of several warnings, plaintiff continued to report to work while dizzy, incoherent and disoriented, which defendants characterized as an over-medicated state, that rendered her unable to perform her job and the work place unsafe. (*Rice Palace Answer,* ¶ 27).

Plaintiff was terminated by Rice Palace's General Manager, Jo Ann Broussard, on April

13, 2003, after Boudreaux reported for work on April 11, 2003 disoriented, with slurred and incoherent speech, and was unable to perform her job duties properly. The manager and supervisor felt that Boudreaux was under the influence of medication which rendered her unable to work. (*Defendant's Opposition* p. 6). Rice Palace states that this instance was followed by several previous instances of similar conduct, where Boudreaux was unable to understand instruction, get food orders out correctly, or safely perform her duties and had to be taken or sent home. *(Id.* at 4). Boudreaux, who attributed these incidents to the effects of various prescription medications she was taken, had repeatedly been warned about coming to work in that condition, on threat of termination. *(Id.* at 7). Boudreaux was eventually taken home by a co-worker, who reported that she had to help Boudreaux walk to the car and to her door once home, that she appeared drunk and was very week and red, and would "pass out and come to" in the car on the way to her home. *(Id.* at 10). When the incident was reported to Jo Ann Broussard, Boudreaux was terminated for reporting to work in that condition and unable to perform her job duties.

On March 2, 2004, plaintiff filed the instant suit against Rice Palace, Inc. and Shop Rite, Inc. under the Employment Retirement Income Security Act (ERISA),[2] 29 U.S.C. §1140, et. seq, the Family and Medical Leave Act of 1993 (FMLA),[3] 19 U.S.C. §2601, et seq., and the

---

[2] Plaintiff charges that defendant Rice Palace violated ERISA § 510, 29 U.S.C.A. §1140, by improperly terminating her in order to preclude her entitlement to medical benefits and also discriminated against plaintiff for the purpose of interfering with the attainment of rights to which plaintiff would have become entitled under the plan. (*Complaint*, ¶¶ 4-5 & 27).

[3] Plaintiff claims that defendant violated FMLA, 29 U.S.C.A. §2601, when plaintiff was allegedly terminated for pretextual reasons following a period of sick leave. Plaintiffs assert that

3

Comprehensive Omnibus Budget Reconciliation Act of 1985 (COBRA),[4] as amended, 19 U.S.C. §1161 et seq., seeking declaratory, injunctive and monetary relief.

Now, plaintiff moves for summary judgment on the basis that defendants violated COBRA by failing to provide her with the required notice within the statutory time frame upon the qualifying event of her termination from employment. Plaintiff claims a pre-textual reason for her termination and alleges that Rice Palace acted in bad faith by claiming "gross misconduct" as a reason for her termination. (*Plaintiff's Motion* ¶ 2-4). Moreover, plaintiffs contend that by continuing to refuse to provide notice after learning of the Administrative Appeals Judge decision[5] that there was no evidence of gross misconduct on the part of plaintiff as concerned the reasons for her termination of employment, and failing to appeal such

---

defendant unlawfully discharged and discriminated against plaintiff for the purpose of interfering with the attainment of rights to which plaintiff was entitled under the act. (*Complaint,* ¶¶ 5 & 30, 33-35).

[4] Plaintiff alleges that defendants violated COBRA, 29 U.S.C. §§ 1611 *et seq.* (COBRA), by failing to afford her continuation of medical coverage following the termination of her employment and unlawfully refusing to continue employee welfare benefits that plaintiff was entitled to pursuant to COBRA. (*Complaint,* ¶ 3).

[5] An undisclosed state agency determined that Boudreaux was discharged for failure to abide by company rules/policies about reporting to work in a condition dangerous to herself and others, and that she was discharged for such misconduct. Boudreaux appeal that decision to a Louisiana State Administrative Law Appeals Judge, Appeals Tribunal for the Office of Regulatory Services. A telephone hearing was conducted and Administrative Law Judge Penny Palermo ruled: "The claimant was discharged from the employment after she exhibited unacceptable behavior at work that indicated she was a danger to herself and to others. She had been warned about similar instances in the past. The claimant indicated that she did not understand why these incidents were happening. She later discovered that there was a medical situation related to her behavior. As such, there is no indication that the claimant was deliberately acting cotnrary to the employer's best interest and policy...the determination of the Agency, which disqualified claimant for benefits...be reversed..." (*Plaintiffs Motion, p. 11, Plaintiff's Exhibit C).*

decision, defendants were clearly in bad faith by thereafter continuing to refuse to give Boudreaux COBRA notice. *(Id. at ¶5)*.

It is not disputed that COBRA applies to the group health plan provided by Rice Palace as sponsored through Shop Rite, or that Boudreaux was a qualified beneficiary in the group health plan. Likewise, it is undisputed that the defendants, as employer and plan sponsor respectively, would be required to provide Boudreaux with notice of her rights to continuation of coverage under CORBA upon the occurrence of a qualifying act. Furthermore, plaintiff alleges and defendants do not dispute that neither of the defendants provided Boudreaux with notice of her right to continue health insurance coverage under the Plan at the time of termination or at any time after she was fired. *(Defendants' Opposition, p.1)*.

On Opposition, defendants argue that there is a genuine issue of material fact to the determination concerning their liability for a COBRA violation as to whether Boudreaux's termination actually was a qualifying event for purposes of COBRA notice requirements. Defendants dispute any bad faith on their part in failing to provide notice at the time of termination or at any time thereafter. Defendants assert that plaintiff was not entitled to Notice nor entitled to elect continuation of coverage under COBRA as Boudreaux's termination was not a qualifying event because she was terminated for gross misconduct.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.

5

1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[6] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support

---

[6] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

a verdict for that party. *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id*

### III. LAW & ANALYSIS

It is well established that COBRA requires employers sponsoring group health plans[7] to notify their employees of the optional availability of continuation coverage under the health insurance plan for an interval specified in 29 U.S.C. § 1162 when, because of the occurrence of a listed "qualifying event" such as termination, a beneficiary would otherwise be ineligible for coverage. 29 U.S.C. §1163. The plan administrator, who is usually also the employer, must notify the beneficiary of her rights under COBRA after the qualifying event occurs.[8] 29 U.S.C.

---

[7] A group health plan is defined as "an *employee welfare benefit plan* providing medical care...to participants or beneficiaries directly or through insurance, reimbursement, or otherwise." 29 U.S.C.A. § 1167(1) (West Supp.1990) (emphasis added). ERISA in turn defines an employee welfare benefit plan as any plan, fund or program...established or maintained by an employer... to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,...medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment. 29 U.S.C.A. § 1002(1).

[8] Where the qualifying event is termination of the employee's employment, the employer is responsible for notifying the plan administrator of the occurrence of the qualifying event. If the

7

§ 1166. In the case of termination, if the termination is a result of "gross misconduct" by the employee, the employee loses his right to elect to continued coverage and thus the employer is exempted from the COBRA notice requirement. 29 U.S.C. § 1163.

The first issue before the Court is whether Boudreaux's employment was terminated for "gross misconduct;" if she was terminated for behavior that could be construed as "gross misconduct," then her termination of employment was not a "qualifying event," therefore she was not entitled to continuing coverage under COBRA and COBRA notice was not required. 29 U.S.C. §§ 1163(2), 1166(a)(2), (4). If she was not entitled to the opportunity for continued benefits under COBRA, she cannot support her claims against defendants.

Plaintiff claims she was entitled to notice of her right to elect to continue her health insurance coverage plan and is entitled to make a COBRA election to continue her health insurance coverage. (*Plaintiff's Memorandum*, p.1). Plaintiff points to her termination by defendant Rice Palace, Inc. as the requisite "qualifying event," at which point both her employer and the plan administrator were required to advise plaintiff of her rights pursuant to COBRA. *(Id.)*. Plaintiff contends that there is no evidence of gross misconduct on the part of Boudreaux and that Rice Palace had no basis in law or fact to make such a determination or

---

employer is the plan administrator, this notice requirement is not applicable. 29 U.S.C.A. § 1166. Upon notification of a qualifying event, the plan administrator must notify each qualified beneficiary of his or her COBRA continuation rights. If the employer is the plan administrator, the employer must provide this notice. *Id.* Generally, this notice must be provided within 14 days of the date the plan administrator received notice that a qualifying event occurred. If the employer is the plan administrator, this notice must be provided within 14 days of the date of the qualifying event in the case of an employee's reduction in hours, termination of employment, entitlement to Medicare, death, or the cessation of coverage due to the employer's filing of bankruptcy. *Id.*

8

allegation in deciding to terminate plaintiff for reasons of gross misconduct. (*Plaintiff's Memorandum*, p.11).

Defendants state that Boudreaux was terminated after several incidents of disorientation, confusion, slurred and incoherent speech at work, which attributed to an overall inability to perform her job properly and safely. Defendants submit medical evidence that supports Rice Palace's decision to fire plaintiff and conclusion that plaintiff's erratic behavior and inability to perform her duties were the result of repeated instances of improper use of controlled substances - over-medication and the effects of mixing multiple prescriptions medications - and not some then undiagnosed medical condition. The Court finds that defendants have not only made a sufficient showing to defeat plaintiff's Motion, but have established that they may be entitled to summary judgment, as the Court finds based on the record and defendant's Opposition with its accompanying Memorandum and Exhibits in support, that there is not a genuine issue of material fact that plaintiff's behavior leading up to her termination did constitute "gross misconduct" within the meaning of COBRA and that she was actually terminated for that conduct.[9]

There are no regulations in effect that define "gross misconduct" for purposes of COBRA, nor is gross misconduct defined in the COBRA statute itself or the employer's health

---

[9]

"Termination by reason of gross misconduct refers to the 'fact not the suspicion of gross misconduct.' Thus the defendant would have to establish both that [the employee] in fact misappropriate company funds and that [the employee] was terminated for that misappropriation...The dispute of fact regarding whether [the employee] misappropriated company funds and whether he was terminated for that reason goes to the core of Defendant's gross misconduct defense." *Cotte v. Cooperativa De Ahorro Y Credito Yabucoena*, 77 F. Supp 2d 237 (D. Puerto Rico. 1999); (*Conery v. Bath Associates*, 803 F. Supp. 1388 (N.D. Ind. 1992).

care plan at issue. Fifth Circuit law also provides little guidance on the subject,[10] so the Court will look to both the plain meaning of the statute and the body of federal case law in applying the gross misconduct standard.

Gross misconduct has consistently been construed to involve more than negligence or incompetence.[11] In *Cotte v. Cooperativa De Ahorro Y Credito Yabucoena*, 77 F. Supp 2d 237 (D. Puerto Rico. 1999) (citing *Zickafoose v. UB Services, Inc.*, 23 F.Supp.2d 652, 655 (S.D.W.Va.1998)), the court applied the ordinary meaning of the gross misconduct statute to conclude that because gross means outrageous, extreme or unconscionable, "conduct is gross misconduct if it is so outrageous that it shocks the conscience." Other federal courts have defined it as involving a level of conduct that is "intentional, wanton, willful, deliberate, reckless or in deliberate indifference to an employer's interest." *See Bryant v. Food Lion*, 100 F.Supp.2d 346, 376 (D.S.C.2000), *aff'd*, 2001 WL 434566, at *2 (4th Cir.2001);[12] *Mlsna v. Unitel Communications, Inc.*, 91 F.3d 876, 881 (7th Cir.1996); *Lloynd v. Hanover Foods*

---

[10] Federal case law addressing the issue of gross misconduct is "sparse." Some courts have looked to state laws for guidance in defining gross misconduct. *See, e.g., Paris v. F. Korbel & Bros., Inc.*, 751 F.Supp. 834 (N.D.Cal.1990) (looking to California's unemployment statute for guidance). Other courts have applied the ordinary meaning of the statutory terms. *See, e.g. Zickafoose v. UB Services, Inc.*, 23 F.Supp.2d 652, 655 (S.D.W.Va.1998).

[11] "Mere inefficiency, unsatisfactory conduct, failure in good performance due to inability, inadvertencies, ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not so deemed [as gross misconduct]." *Paris v. F. Korbel & Bros., Inc.*, 751 F. Supp. 834 (N.D. Cal. 1990).

[12] "Gross misconduct is "the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees." *Bryant*, 100 F.Supp.2d at 376, *aff'd*, 2001 WL 434566, at *2

*Corp.*, 72 F.Supp.2d 469, 479 (D.Del.1999); *Burke v. Am. Stores Employee Benefit Plan*, 818 F.Supp. 1131, 1135 (N.D.Ill.1993); *Collins v. Aggreko*, 884 F.Supp. 450, 454 (D.Utah 1995); *Paris v. F. Korbel & Bros., Inc.*, 751 F.Supp. 834, 838 (N.D.Cal.1990).[13]

Defendants present ample medical evidence establishing a history of heavy usage of prescription medications by plaintiff, which defendants characterize as a "misuse."[14] Plaintiff's medical records, attached as exhibits to Defendant's Opposition and Memorandum, show that over her course of employment, plaintiff took a mixture of several of the following drugs: Ultram (fibromalgia), Soma (muscle relaxers), Lotensor 12.5 (hypertension), Lotensin (high pressure), Effexor (antidepressant), Lipitor (cholesterol), among others. (*Defendants' Opposition*, p. 8, *Defendants' Exhibits 9-11*). Additionally, the day after the incident following her termination, Boudreaux went to the American Legion Hospital in Crowley, Louisiana, complaining of nausea, weakness, disorientation, fatigue, fever, blurred vision, and shortness of

---

[13] "Gross misconduct," as used in comparable statute applicable to federal employees, is a 'flagrant and extreme transgression of law or established rule of action for which an employee is separated and concerning which a judicial or administrative finding of gross misconduct has been made.'" *Paris v. F. Korbel & Bros., Inc.*, 751 F.Supp. 834, 838 (N.D.Cal.1990); *cf.* 5 C.F.R. § 890.1102 (2001).

[14] Defendants also submit the affidavit of Joseph Manno, Ph.D., licensed Pharmacist, Professor and Chief of Clinical Toxicology at LSU Medical Center in Shreveport Louisiana. Dr. Manno reviewed plaintiff's pharmacy records and detailed the common side effects of the medications that Boudreaux was on during the course of her employment with Rice Palace. The listed side effects include the conditions that Boudreaux manifested while at work at Rice Palace and which made her unfit to perform her job, such as psychomotor impairment, central nervous system effect, slurred or incoherent speech, disorientation, confusion and drowsiness. Dr. Manno also discussed the dangers and physical consequences of combining several of the medications, which according to plaintiff's pharmacy records she apparently was doing.

breath. (*Id.* at 10). At that time, she reported that she had prescriptions for Soma, Lotensin, Celebrex, Aciphes, and Diazepram. *(Defendants' Exhibit 7, American Legion Hospital Medical Record).* Her discharge diagnosis was "dehydration and sleep deprivation." *(Id.).* Additionally, defendants' Opposition recounts other incidents concurrent with or in close proximity to plaintiff's stint of employment with Rice Palace, when plaintiff reported to the emergency room complaining of symptoms of dizziness, weakness and disorientation, which the treating medical physicians consistently attributed as over-medication or the side effects of medications she was on at the time.[15]

Defendants contend that Boudreaux's use of these medications not only rendered her unable to perform her job duties, but rendered Boudreaux a danger to herself, her co-workers and overall created an unsafe work place. Defendants submit affidavits from Jo Ann Broussard, General Manager of the Rice Palace, and Bert Istres, Boudreaux's supervisor the night of the incident that caused her termination, regarding the course of events leading up to plaintiff's termination. The attached affidavits show that Boudreaux was first demoted from

---

[15] On August 30, 2002, plaintiff went to the emergency room after having passed out twice while driving. The hospital records for the admission state that she had "disorientation secondary to medication side effects, Ultram and Soma mixture (also taking Lotensin)." *(Defendants' Exhibit 3, record of American Legion Hospital).* She again reported to the emergency room on Augist 30, and gave a history of becoming dizzy, weak and disoriented after being started on Prednisone, Ultram and Bextra. *Id.* On July 14, 2004 again went to the American Legion Hall with complaints of weakness, fainting spells, incoherence, slurred speech, vision problems and possible dehydration. Boudreaux's diagnosis was "over medication and depression," and the hospital physician recommended that she stop taking sedatives and narcotic medication, including Valium, Flexeril and Hydrocodone. *(Defendants' Exhibit 12).*

assistant kitchen manager to dishwasher because after several accidents at work it was necessary to remove Boudreaux from areas around stoves, oven, fryers and grills. The accidents caused Boudreaux's management and co-employers concern that Boudreaux was a danger to herself and those working near her in the kitchen. *(Defendants Exhibit 1, Affidavit of JoAnn Broussard at 24)*. Other employees working with Boudreaux and under her supervision as assistant kitchen manger complained that when using medication Boudreaux was irritable, incoherent, and out of control. (*Id.* at19, 21; *Defendant's Opposition* p. 9). Boudreaux was also taking excessive time off from work and several times had to leave work early without completing her shift upon becoming dizzy, disoriented and weak at work. Boudreaux repeatedly attributed her inability to properly perform her job to the medications that she was taking. *(Defendants Exhibit 1, Affidavit of JoAnn Broussard)*.

It was after thirty days of satisfactory work product with no appearance of being under the influence of medications at work that Boudreaux was returned to cooking/food preparation duties with the understanding that if she ever again reported to work incoherent and not able to perform her job duties satisfactorily or if there was an unsafe condition in the kitchen she would be terminated. (*Defendant's Opposition* p. 9). Then, as recounted above, on April 11, 2003, when Boudreaux reported to work she showed signs of confusion, slurred and incoherent speech. Her supervisor, Burt Istre stated that she was confused by the food orders and could not remember what food went on the plates. (*Defendants' Exhibit 5, Istre Affidavit*). Istre also reported that Boudreaux seemed drunk and had trouble keeping her eyes open and was

13

staggering. Eventually, Istres had a co-employee, Sheree Rowell, take Boudreaux home, who reported that Boudreaux needed assistance walking, passed out at some points in the car, and overall continued displaying drunk-like behavior. *(Id)*.

In sum, defendants argue that Boudreaux was fired for more than mere unsatisfactory work performance or inability to perform her job duties. Defendants' explain that plaintiff not only violated company policy and the several warnings with threat of termination by Rice Palace, but acted in a way that was dangerous to herself and her co-workers. The Court finds that defendants' proffered evidence supports their conclusion that plaintiff's improper use of prescription medication resulted in plaintiff's inability to properly and safely perform her duties. Moreover, such use was done in "deliberate violation of the employer's standards of conduct imposed on employees, or carelessness or negligence of such a degree or recurrence as to manifest equal culpability, wrongful intent, or evil design aimed at causing injury to the employer or the employee's fellow workers;" which falls within the proffered definitions of gross misconduct. *Korbel & Bros., Inc.*, 751 F. Supp. 834 (N.D. Cal. 1990).

In considering the parties' Motion and Opposition, the Court must make all inferences of fact in favor of the non-moving party. In so doing, the Court finds that plaintiff is not entitled to judgment as a matter of law. A reasonable a trier of fact could find that Rice Palace's decision to terminate plaintiff for reasons of gross misconduct was reasonable, as well as the employer's conclusion that plaintiff's behavior constituted gross misconduct done either intentionally or with gross disregard for the employer's interest in maintaining a safe workplace

and of the reasonable behavioral standards that any employer has a right to expect of his employees, especially considering the repeated warnings given her. Therefore, the Court holds that based on the evidence submitted by the parties, plaintiff has not met her summary judgment burden of proof and has not established that there is not a genuine issue of material fact that plaintiff's conduct did not rise to the level of gross misconduct. Moreover, as the Court has found that the record suggests that plaintiff's conduct constituted gross misconduct, the Court will not reach plaintiff's other claims alleging that defendants acted in bad faith, and summary judgment to them will also be denied. Conversely, in considering the factual record, the defendants have established that plaintiff's gross misconduct resulted in her termination, and that there is not a justiciable issue of fact regarding the same.

### IV. NOTICE OF THE COURT'S INTENTION TO ENTER SUMMARY JUDGMENT *SUA SPONTE* IN FAVOR OF DEFENDANT

Based on the above, the Court is considering entry of summary judgment *sua sponte* in favor of defendant. It is well-settled that a district court may, in denying the moving party's motion for summary judgment, grant summary judgment sua sponte in favor of the non-movant. FED. R. CIV. P. 56(c). *Washington v. Resolution Trust Corp.*, 68 F.3d 935, 939 (5th Cir.1995); *Mannesman Demag Corp. v. M/V Concert Express*, 225 F.3d 587, 595 (5th Cir.2000); *C & W Asset Acquisition LLC v. Knox*, 104 Fed.Appx. 936, *938,(5th Cir.2004). Federal Rule of Civil Procedure 56 requires the prompt disposition of cases in the absence of any genuine issues of material fact for the court to consider. *Exxon Corp. v. St. Paul Fire and*

15

*Marine Ins. Co.*, 129 F.3d 781, 786 (5th Cir.1997). Thus, under the proper conditions, the Court should grant relief to that party which is entitled to such even if it has not been demanded. *Id; American Home Assur. Co. v. United Space Alliance, LLC* 378 F.3d 482, 486 (5th Cir. 2004).

The court's standard of review in entering summary judgment *sua sponte* is the same as when entered on motion of a party, and the Court considers whether the record indicates that there is no genuine issue as to any material fact, and that the party is entitled to judgment as a matter of law. *Potomac Ins. Co. of Ill. v. Jayhawk Med. Acceptance Corp.*, 198 F.3d 548, 550 (5th Cir.2000)*(citing* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986)); *Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*, 261 F.3d 466, 477 (5th Cir.2001).

## V. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment will be DENIED.

Moreover, whereas here, since the Court is considering entering a *sua sponte* judgment, plaintiff as the moving party is entitled to ten-days notice of this intention so that she has fair opportunity to come forward with all of her evidence and make a response. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 435 (5th Cir.2000); *Love v. National Medical Enterprises*, 230 F.3d 765, 770 -771 (5th Cir.2000). Plaintiff is herein notified that for the reasons stated above it is the Court's intention to enter summary judgment *sua sponte* in favor of defendants. Plaintiff will be allowed the full and fair opportunity to which he is entitled to respond.