RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE  6, 11 , 07
        68

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| Anna Boudreaux | Civil Action No. 04-541 |
| versus | Judge Tucker L. Melançon |
| Rice Palace, Inc., et al | Magistrate Judge Mildred E. Methvin |

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Rec. Doc. 42] filed by defendants Rice Palace, Inc. and Shop Rite, Inc.; and plaintiff Anna Boudreaux's Opposition thereto [Rec. Doc. 44]. For the following reasons, defendants' Motion will be GRANTED in part and DENIED in part.

### I. FACTUAL BACKGROUND

Defendant Rice Palace, Inc. operates a restaurant and gaming facility that employs in excess of fifty employees. (*Complaint,* ¶ 10). Plaintiff was employed with Rice Palace, Inc. in various capacities from on or about February 5, 2001 until April 12, 2003, when Rice Palace's General Manager fired her. (*Complaint,* ¶¶ 11-12). While employed by defendant, Rice Palace, Boudreaux participated in a group health plan providing health benefits to eligible employees. The plan was sponsored through Rice Palace's sister corporation, defendant Shop Rite, Inc.[1] (*Complaint,* ¶ 25). Shop Rite, Inc. serves as the plan administrator and is also a

---

[1]

Both Rice Palace and Shop Rite are both closely held Louisiana corporations. Plaintiff claims that the two corporation have intermingled and overlapping business interests. (*Complaint,* ¶ 2).

1

named fiduciary and agent for service of process of Rice Palace. *Id.* Plan administration is provided through a third party benefit services manager, Gilsbar, Inc. *Id.*

During the hiring process, Boudreaux indicated in a medical questionnaire that she was taking Lotenson 12.5 for hypertension and high blood pressure and Ultram for firbromalgia. (Defendants' Exhibit 5). She denied being under other medical treatment for any condition, denied having any physical impairment, and checked "no" under the question "do you have or previously have had hyper-insulism." (*Id.* at paras. 6-7).

Throughout the course of her employment, while at work plaintiff experienced disorientation, slurring of speech, dizziness and other physical conditions at work, which plaintiff claims were medically related. (*Complaint,* ¶¶ 22 & 31). Between February 2001 and September 2002, Boudreaux is alleged to have missed work on several occasions for various minor and unrelated medical reasons. (*Defendants' Motion,* p. 8). On September 1, 2002, Boudreaux reported for work with a discharge slip from the American Legion Hospital, where she reportedly had been taken after she passed out twice while driving. Boudreaux told her employers that the hospital did not know what was wrong with her and that she wanted to take some time off to investigate her condition. (*Defendants' Exhibit 10,* Deposition of Boudreaux). However, the American Legion Hospital records of August 30, 2002 reflect that Boudreaux was seen for "disorientation secondary to medication side effects, Ultram and Soma mixture (also taking Lotensin)." (*Defendants' Exhibit 6*). She also returned to the American Legion Hospital emergency room on August 31, 2002 and gave a history of becoming weak, dizzy and

disoriented after being started on Prednisone, Ultram and Bextra. (*Defendants' Exhibit 7*).

On September 2, 2002 plaintiff was permitted to take medical leave to seek medical diagnosis of her problem and instructed not to return until she furnished a physician's statement that she was able to perform her job duties. (*Complaint*, ¶¶ 22 & 31). On September 10, 2002, with medical clearance from her treating physician, plaintiff returned to work as assistant kitchen manager.  However, plaintiff was soon demoted from assistant kitchen manger to dish washer. Defendants allege that Boudreaux was unable to safely and properly perform the duties of her job, was a danger to herself and the people working with her, and needed to be removed from around stoves, ovens, fryers and grills.  Defendants also allege that Boudreaux had missed an excessive amount of time from work, often leaving early before completing her shift, and had told her supervisor that she was unable to perform her job duties because her health condition required her to take certain medication.  Plaintiff replies that she had not missed an excessive amount of time at work and that in the course of her two years employment with Rice Palace, Inc, she only experienced three incidents at work. (*Plaintiff's Statement of Material Facts*).  After two weeks as a dishwasher, Boudreaux was promoted to line cook, with the understanding that if she ever reported to work in an incoherent condition and was not able to perform her job duties satisfactorily, she would be terminated. (*Defendants' Motion, p. 5*).

Plaintiff was terminated by Rice Palace's General Manager, Jo Ann Broussard, on April 13, 2003, after Boudreaux reported for work on April 11, 2003 disoriented, with slurred and

3

incoherent speech, and was unable to perform her job duties properly.  According to her supervisor, Bert Istre, Boudreaux appeared to be under the influence of medication, that she seemed as if she was drunk,  and overall was unable to work. Boudreaux allegedly was unable to understand instructions, get food orders out correctly, or safely perform her duties.  She eventually was taken home by a co-worker, who reported that she had to help Boudreaux walk to the car and to her door once home, that she appeared drunk and was very week and red, and would "pass out and come to" in the car on the way to her home. *(Id.* at 10). When the incident was reported to Jo Ann Broussard, Boudreaux was terminated for reporting to work in that condition and unable to perform her job duties.

On March 2, 2004, plaintiff filed the instant suit against Rice Palace, Inc. and Shop Rite, Inc. under the Employment Retirement Income Security Act (ERISA),[2] 29 U.S.C. §1140, et. seq, the Family and Medical Leave Act of 1993 (FMLA),[3] 19 U.S.C. §2601, et seq., and the Comprehensive Omnibus Budget Reconciliation Act of 1985 (COBRA),[4] as amended, 19

---

[2]

Plaintiff alleges that Rice Palace violated ERISA § 510, 29 U.S.C.A. §1140, by improperly terminating her in order to preclude her entitlement to medical benefits and also discriminated against her for the purpose of interfering with the attainment of rights to which plaintiff would have become entitled under the plan. (*Complaint,* ¶¶ 4-5 & 27).

[3]

Plaintiff also alleges that defendants violated FMLA, 29 U.S.C.A. §2601, when plaintiff was allegedly terminated for pretextual reasons following a period of sick leave.  Plaintiff asserts that defendants unlawfully discharged and discriminated against her for the purpose of interfering with the attainment of rights to which plaintiff was entitled under the act. (*Complaint,* ¶¶ 5 & 30, 33-35).

[4]

Last, Boudreaux alleges that defendants violated COBRA, 29 U.S.C. §§ 1611 *et seq.* (COBRA), by failing to afford her continuation of medical coverage following the termination of her

4

U.S.C. §1161 et seq., seeking declaratory, injunctive and monetary relief.

In August 2006, plaintiff moved for summary judgment on the claim that defendants violated COBRA by failing to provide her with the required notice within the statutory time frame upon the qualifying event of her termination from employment [Rec. Doc. 25]. Plaintiff alleged a pre-textual reason for her termination and alleged that Rice Palace acted in bad faith by claiming "gross misconduct" as a reason for her termination. (*Plaintiff's Motion* ¶ 2-4). Moreover, plaintiff contended that by continuing to refuse to provide notice after learning of the Administrative Appeals Judge decision[5] that there was no evidence of gross misconduct on the part of plaintiff as concerned the reasons for her termination of employment, and then failing to appeal such decision, defendants were clearly in bad faith by thereafter continuing to refuse to give Boudreaux COBRA notice. *(Id. at ¶5)*.

In denying plaintiff's Motion, the Court notified plaintiff of its intention to enter

employment and unlawfully refusing to continue employee welfare benefits that she was entitled to pursuant to COBRA. (*Complaint,* ¶ 3).

[5]

An unnamed state agency, assumed to be the Louisiana Department of Labor Board of Review, determined that Boudreaux was discharged for failure to abide by company rules/policies about reporting to work in a condition dangerous to herself and others, and that she was discharged for such misconduct. Boudreaux appealed that decision to a Louisiana State Administrative Law Appeals Judge, Appeals Tribunal for the Office of Regulatory Services. A telephone hearing was conducted and Administrative Law Judge Penny Palermo ruled: "The claimant was discharged from the employment after she exhibited unacceptable behavior at work that indicated she was a danger to herself and to others. She had been warned about similar instances in the past. The claimant indicated that she did not understand why these incidents were happening. She later discovered that there was a medical situation related to her behavior. As such, there is no indication that the claimant was deliberately acting contrary to the employer's best interest and policy...the determination of the Agency, which disqualified claimant for benefits...be reversed..." (*Plaintiffs Motion, p. 11, Plaintiff's Exhibit C*).

summary judgment *sua sponte* in favor of defendants and allowed plaintiff a fair opportunity to come forward with all of her evidence and make a response [Rec. Docs. 32 & 33]. Plaintiff filed an Opposition to the Court's Proposed Grant of *Sua Sponte* Summary Judgment in favor of Defendants Dismissing Plaintiff's Cobra Claims [Rec. Doc. 36], and a hearing was held on the matter on January 24, 2007 [Rec. Doc. 41]. The Court decided not to enter *sua sponte* summary judgment for defendants, but directed the defendants to file a Motion for Summary Judgment if they thought it necessary and appropriate and the best use of judicial resources. Defendants' Motion is now before the Court.

Defendants' Motion for Summary Judgment [Rec. Doc. 42] seeks to dismiss all claims brought by plaintiff, including the claim under COBRA previously considered from plaintiff's perspective, as well as the claims brought pursuant to ERISA and FMLA. Defendants assert that there is no genuine issue of material regarding the liability issue common in all claims - Rice Palace's motive in terminating plaintiff's employment.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would

entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[6] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence

---

[6] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56©; *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id*

### III. LAW & ANALYSIS

#### A.   COBRA CLAIMS

It is well established that COBRA requires employers sponsoring group health plans[7] to notify their employees of the optional availability of continuation coverage under the health insurance plan for an interval specified in 29 U.S.C. § 1162 when, because of the occurrence of a listed "qualifying event" such as termination, a beneficiary would otherwise be ineligible for coverage. 29 U.S.C. §1163. The plan administrator, who is usually also the employer, must

---

[7] A group health plan is defined as "an *employee welfare benefit plan* providing medical care...to participants or beneficiaries directly or through insurance, reimbursement, or otherwise." 29 U.S.C.A. § 1167(1) (West Supp.1990) (emphasis added). ERISA in turn defines an employee welfare benefit plan as any plan, fund or program...established or maintained by an employer... to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,...medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment. 29 U.S.C.A. § 1002(1).

notify the beneficiary of her rights under COBRA after the qualifying event occurs.[8]  29 U.S.C.

§ 1166.   In the case of termination, if the termination is a result of "gross misconduct" by the

employee, the employee loses his right to elect to continued coverage and thus the employer is

exempted from the COBRA notice requirement. 29 U.S.C. § 1163.

The first issue before the Court is whether Boudreaux's employment was terminated for

"gross misconduct."  If she was terminated for behavior that could be construed as "gross

misconduct," then her termination of employment was not a "qualifying event," therefore she

was not entitled to continuing coverage under COBRA and COBRA notice was not required.

29 U.S.C. §§ 1163(2), 1166(a)(2), (4).  If she was not entitled to the opportunity for continued

benefits under COBRA, she cannot support her claims against defendants.  On summary

judgment, defendants bear the burden of establishing that there are no substantial genuine

issues of material fact to whether plaintiff in fact committed gross misconduct.

There are no regulations in effect that define "gross misconduct" for purposes of

COBRA, nor is gross misconduct defined in the COBRA statute itself or the employer's health

---

[8]

Where the qualifying event is termination of the employee's employment, the employer is
responsible for notifying the plan administrator of the occurrence of the qualifying event. If the
employer is the plan administrator, this notice requirement is not applicable. 29 U.S.C.A. § 1166.
Upon notification of a qualifying event, the plan administrator must notify each qualified
beneficiary of his or her COBRA continuation rights. If the employer is the plan administrator,
the employer must provide this notice. *Id.* Generally, this notice must be provided within 14 days
of the date the plan administrator received notice that a qualifying event occurred. If the
employer is the plan administrator, this notice must be provided within 14 days of the date of the
qualifying event in the case of an employee's reduction in hours, termination of employment,
entitlement to Medicare, death, or the cessation of coverage due to the employer's filing of
bankruptcy. *Id.*

care plan at issue. Fifth Circuit law also provides little guidance on the subject,[9] so the Court will look to both the plain meaning of the statute and the body of federal case law and Louisiana state law in applying the gross misconduct standard.

Gross misconduct has consistently been construed to involve more than negligence or incompetence or unsatisfactory performance.[10] The term "gross misconduct" has generally been understood to include misconduct that is "intentional, wanton, willful, deliberate, reckless or in deliberate indifference to an employer's interest." *See Bryant v. Food Lion,* 100 F.Supp.2d 346, 376 (D.S.C. 2000), *aff'd,* 2001 WL 434566, at *2 (4th Cir. 2001);[11] *Mlsna v. Unitel Communications, Inc.,* 91 F.3d 876, 881 (7th Cir. 1996); *Lloynd v. Hanover Foods Corp.,* 72 F.Supp.2d 469, 479 (D.Del. 1999); *Burke v. Am. Stores Employee Benefit Plan,* 818 F.Supp. 1131, 1135 (N.D.Ill. 1993); *Collins v. Aggreko,* 884 F.Supp. 450, 454 (D.Ut. 1995);

---

[9] Federal case law addressing the issue of gross misconduct is "sparse." Some courts have looked to state laws for guidance in defining gross misconduct. *See, e.g., Paris v. F. Korbel & Bros., Inc.,* 751 F.Supp. 834 (N.D.Cal. 1990) (looking to California's unemployment statute for guidance). Other courts have applied the ordinary meaning of the statutory terms. *See, e.g. Zickafoose v. UB Services, Inc.,* 23 F.Supp.2d 652, 655 (S.D.W.Va. 1998).

[10] "Mere inefficiency, unsatisfactory conduct, failure in good performance due to inability, inadvertencies, ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not so deemed [as gross misconduct]...[gross misconduct is] carelessness or negligence of such a degree or recurrence...to show an intentional and substantial disregard of the employers interests of the employees duties and obligations to his employer." *Paris v. F. Korbel & Bros., Inc.,* 751 F. Supp. 834, 838 (N.D. Cal. 1990).

[11] "Gross misconduct is "the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees." *Bryant,* 100 F.Supp.2d at 376, *aff'd,* 2001 WL 434566, at *2

*Paris v. F. Korbel & Bros., Inc.,* 751 F.Supp. 834, 838 (N.D.Cal. 1990).[12] "It is misconduct beyond mere minor breaches of employee standards, but conduct that would be considered gross in nature." *Id.  See e. g. Nakisa v. Continental Airlines,* 2001 U.S. Dist. LEXIS 8952 (S.D.Tex. May 9, 2001) (using a racial epithet and throwing an apple at a fellow employee); *Zickafoose v. UB Servs., Inc.,* 23 F.Supp.2d 652 (S.D.W.Va.1998) (severely beating a fellow employee); *Collins,* 884 F.Supp. at 454 (driving a company vehicle while intoxicated); *Burke v. American Stores Employee Benefit Plan,* 818 F.Supp. 1131 (N.D.Ill.1993) (criminal theft); *Conery v. Bath Assoc.,* 803 F.Supp. 1388 (N.D.Ind.1992) (embezzling company funds); *Adkins v. United Int'l Investigative Servs., Inc.,* 1992 U.S. Dist. LEXIS 4719 (N.D.Cal. Mar. 27, 1992) (deserting security post and falsifying log to earn extra paycheck).

Similarly, under Louisiana law, for a claimant to be disqualified from unemployment benefits because of "misconduct connected with his employment" under Louisiana's Labor and Workers' Unemployment Compensation, LSA-R.S. 23:1601(2), the misconduct must have resulted from willful or wanton disregard of the employer's interest, from a deliberate violation of the employer's rules, or from a direct disregard of standards of behavior which the employer has the right to expect from his employees. *Bean Dredging Corp. v. Administrator, Div. of*

---

[12] "Gross misconduct," as used in comparable statute applicable to federal employees, is a 'flagrant and extreme transgression of law or established rule of action for which an employee is separated and concerning which a judicial or administrative finding of gross misconduct has been made.'" *Paris v. F. Korbel & Bros., Inc.,* 751 F.Supp. 834, 838 (N.D.Cal.1990); *cf.* 5 C.F .R. § 890.1102 (2001).

*Employment Sec., Dept. of Labor,* 679 So.2d 1019, 1022 (La.App. 3rd Cir.,1996); *Eugene v.*

*Adm'r Div. of Emp. Sec.,* 525 So.2d 1185 (La.App. 5th Cir.1988). In *Brannan v. Wyeth*

*Laboratories, Inc.* 526 So.2d 1101, 1106 (La. 1988), in dealing with an employment stock

option plan that provided that terminated employees were entitled to exercise the option within

ninety days of termination unless the employee was fired for gross misconduct, the Louisiana

Supreme Court turned to the definition previous given in *State v. O'Hara,* 211 So.2d 641, 648

(1968):

> Misconduct', in general, is improper conduct or wrong behavior, but as used in speech
> and in law it implies that the conduct complained of was willed and intentional. It is
> more than that conduct which comes about by reason of error of judgment or lack of
> diligence. It involves intentional wrongdoing or total lack of concern for one's conduct.
> Whether or not an act constitutes misconduct must be determined from the facts
> surrounding the act, the nature of the act, and the intention of the actor. 'Gross' is
> generally defined as 'flagrant' and 'extreme.

In *O'Hara,* the issue was removal of a judge from office, where the Court found that O'Hara

was guilty of misconduct for having a "very intimate and personal relationship" with a

contractor who was convicted of mail and wire fraud and conspiring to defraud, and for having

used his title of judge and the prestige of his office in an attempt to obtain evidence in order to

set aside the conviction, and accepted gifts and gratuities from the convicted contractor.

However, he was not found to be guilty of the flagrant and extreme misconduct which would

constitute gross misconduct and thus warrant his removal. *State v. O'Hara,* 211 So.2d 641

(1968). Likewise, in *Brannan v. Wyeth Laboratories, Inc.,* the Court found that plaintiff's

actions - failure to make adequate number of calls, falsification of call reports to meet

company requirements, and failure to adequately supply products to regular customers - amounted to misconduct justifying termination of his employment, but did not amount to gross misconduct such that he should be denied the stock option rights.  526 So.2d 1101, 1106 (La. 1988).

Plaintiff contends that there is no evidence of gross misconduct on the part of Boudreaux and that at the time of termination Rice Palace had no basis in law or fact upon which to base such an allegation.  Plaintiff argues that defendants' case is based on inference, speculation and untruthful assertions and that plaintiff did not misuse or abuse her medications, all of which were prescribed by her treating physicians.  Additionally, plaintiff claims that the allegations of gross misconduct were simply a false pretext for firing her, masking defendants' discriminatory and retaliatory intent.

Defendants allege that Boudreaux was terminated after several incidents of exhibiting aberrant behavior including dizziness, disorientation, confusion, slurred and incoherent speech at work, which attributed to an overall inability to perform her job properly and safely and repeatedly required her to be sent home.  It is alleged that Boudreaux was warned on several occasion that repetition of this conduct and presenting to work in an over-medicated condition would lead to her termination.  Defendants argue an employer has a right to expect and demand that employees not be impaired at work to the point of being dangerous to themselves or others and that plaintiff's behavior satisfies any "legal definition of gross misconduct, which includes not only deliberate violations of the employer's standards of conduct, but also carelessness or negligence of such a degree or recurrence as to manifest culpability."

13

(*Defendants' Motion*, p. 7).

Defendants present ample medical evidence in support of its allegation that plaintiff's erratic behavior and inability to safely perform her duties were the result of repeated instances of improper use of controlled substances - over-medication and the effects of mixing multiple prescriptions medications - and not some, then undiagnosed, medical condition. (*See Defendants' Exhibits* 5, 6, 10). The submitted medical evidence indeed establishes a history of usage of prescription medications by plaintiff, which defendants characterize as a "misuse." (*Defendants' Exhibit* 2, Chronology of Medical Records)(*Defendants' Exhibit* 3, Chronology of Prescription Drug History). [13] Plaintiff's medical records show that over her course of employment, plaintiff took a mixture of several of the following drugs: Ultram (fibromalgia), Soma (muscle relaxers), Lotensor 12.5 (hypertension), Lotensin (high pressure), Effexor (antidepressant), Lipitor (cholesterol), among others. (*Defendants' Exhibit* 3, Chronology of Prescription Drug History). The day after the incident following her termination, Boudreaux went to the American Legion Hospital in Crowley, Louisiana, complaining of nausea, weakness, disorientation, fatigue, fever, blurred vision, and shortness of breath. (*Defendants'*

---

[13] Defendants also submit the affidavit of Joseph Manno, Ph.D., licensed Pharmacist, Professor and Chief of Clinical Toxicology at LSU Medical Center in Shreveport Louisiana. Dr. Manno reviewed plaintiff's pharmacy records and detailed the common side effects of the medications that Boudreaux was on during the course of her employment with Rice Palace. The listed side effects include the conditions that Boudreaux manifested while at work at Rice Palace and which made her unfit to perform her job, such as psychomotor impairment, central nervous system effect, slurred or incoherent speech, disorientation, confusion and drowsiness. Dr. Manno also discussed the dangers and physical consequences of combining several of the medications, which according to plaintiff's pharmacy records she apparently was doing.

14

*Motion.* p. 10). At that time, she reported that she had prescriptions for Soma, Lotensin, Celebrex, Aciphes, and Diazepram. *(Defendants' Exhibit 7, American Legion Hospital Medical Record).*

Defendants contend that there were repeated instances of impairment, concurrent with or in close proximity to plaintiff's stint of employment with Rice Palace, including automobile accidents and passing out at work, which the treating medical physicians attributed as over-medication or the side effects of medications she was on at the time. Defendants argue that Boudreaux's use of these medications not only rendered her unable to perform her job duties, but rendered Boudreaux a danger to herself, her co-workers and created an unsafe work place.

Defendants submit affidavits from Jo Ann Broussard, General Manager of the Rice Palace, and Bert Istres, Boudreaux's supervisor the night of the incident that caused her termination, regarding the course of events leading up to plaintiff's termination. *(Defendants' Exhibit 4, Affd. Jo Ann Broussard)(Defendants' Exhibit 9, Affd. Bert Istre).* Broussard's affidavit indicates that Boudreaux was first demoted from assistant kitchen manager to dishwasher because after several accidents at work it was necessary to remove Boudreaux from areas around stoves, oven, fryers and grills. The incidents caused Boudreaux's management and co-employers concern that Boudreaux was a danger to herself and those working near her in the kitchen. *(Defendants' Exhibit 4).* In her affidavit, Broussard also stated that other employees working with Boudreaux and under her supervision as assistant kitchen manger complained that when using medication Boudreaux was irritable, incoherent, and out of

15

control. (*Id.*). On April 11, 2003, when Boudreaux reported to work she showed signs of confusion, slurred and incoherent speech. Her supervisor, Bert Istre reported that Boudreaux seemed drunk and had trouble keeping her eyes open and was staggering. Eventually, Istres had a co-employee take Boudreaux home, who reported that Boudreaux needed assistance walking, passed out at some points in the car, and overall continued displaying drunk-like behavior. *(Id)*.

In sum, defendants argue that Boudreaux was fired for more than mere unsatisfactory work performance or inability to perform her job duties. Defendants allege that plaintiff not only violated company policy and the several warnings with threat of termination by Rice Palace, but acted in a way that was dangerous to herself and her co-workers. Defendants allege further that it is not necessary to prove that plaintiff actively abused her medication to show gross misconduct because the continued misuse of her medications reflect "at least knowledge of the consequences which were substantially certain to follow from that pattern of abuse (intent), or negligence of such a degree or recurrence as to manifest culpability for the consequences." (*Defendants' Motion, p. 15*).

Plaintiff contends that there are material issues of fact to whether her taking multiple medications, all prescribed by her physician, rises to a level of intentional, willful, flagrant and extreme conduct such as would constitute gross misconduct. Boudreaux alleges that the symptoms she displayed at work where not the result of her taking the medications and that the prescription medications did not render her unable to perform her job duties. Plaintiff presents

the opinion of her treating physician, Dr. Joe B. Holden, that the symptoms she displayed at work, including on April 12, 2003, were likely due to an undiagnosed low blood sugar problem and/or hypoglycemia. (*Plaintiff's Exhibit* 4, Excerpts from Deposition for Dr. Joe B. Holden, M.D.).  Boudreaux also argues that the evidence reflects that she filled her prescriptions and took her medications only in accordance with her doctor's instructions and that the record does not suggest that she in any way took her prescription medications in a manner which would constitute intentional abuse or misuse of her medications contrary to her doctor's orders concerning her prescription medications.

In most cases, the distinction between gross misconduct and a simple mistake is clear. This is not one of those cases.  It is painfully clear that plaintiff made mistakes and those mistakes had potentially serious consequences to her, her co-workers, and her employer, and the question as to whether the evidence establishes that there is no genuine issue of material fact that the misconduct was intentional, wanton, willful, or deliberate remains.  On the other hand, her behavior certainly involves more than mere negligence or incompetence.  Plaintiff's performance seemingly was substandard and Rice Palace was certainly well within its right to terminate her employment.   However, Congress may have expected an employee's conduct to be much more wanton and deliberate before losing the right to elect continuing health care coverage. *See Zickafoose v. UB Services, Inc.,* 23 F.Supp.2d 652, 655 (S.D.W.Va. 1998) (finding that gross misconduct must be so outrageous, extreme, and unconscionable that it truly "shocks the conscience").

A motion for summary judgment can only be granted if the pleadings, depositions and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Before a court can find that there are no genuine issues of material facts, it must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Ladue v. Chevron, U.S.A., Inc.*, 920 F.2d 272 (5th Cir. 1991). The parties each submit different versions of material facts relevant to defendants' liability under COBRA. A case in such a posture is not properly disposed of by summary judgment.

## B.    FMLA

The FMLA mandates that employers have a *prescriptive* obligation under the FMLA - they must grant employees substantive rights guaranteed by the FMLA - and a *proscriptive* obligation - they may not penalize employees for exercising these rights. *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir.1999). Plaintiff claims that defendants violated the FMLA in that defendants unlawfully discharged and discriminated against plaintiff for the purpose of interfering with the attainment of rights to which plaintiff was entitled. Specifically, plaintiff alleges that she was fired so that defendants could avoid paying plaintiff's continued medical care costs and avoid plaintiff availing herself of medical leave. She also claims that defendants' actions were designed to and did unlawfully deny plaintiff her rights under the FMLA. Thus, plaintiff's Complaint seemingly alleges a violation of both the proscriptive and prescriptive obligations.

18

## 1.      *Violation of FMLA's Proscriptive Provisions*

Plaintiff's Complaint alleges a violation of her proscriptive obligation in claiming that

she was fired for exercising her right to request FMLA leave. To defeat summary judgment,

plaintiff would have to establish a prima facie case of discrimination or retaliation under the

FMLA, by showing that: (1) she is protected under the FMLA; (2) she suffered an adverse

employment decision; and (3) either (a) she was treated less favorably than an employee who

had not requested leave under the FMLA, or (b) the adverse decision was made because of

plaintiff's request for leave. *Bocalbos v. Nat'l W. Life Ins. Co.,* 162 F.3d 379, 383 (5th Cir.

1998). The Fifth Circuit has held that such a claim should be analyzed under the framework

established in *McDonnel Dougals Corp. v. Green,* 411 U.S. 792 (1973), under which, if

plaintiff makes a *prima facie* case, the burden shifts to defendants to articulate a legitimate

non-discriminatory or non-retaliatory reason for terminating plaintiff's employment. *Id.*   If

defendants satisfy that burden, plaintiff must then prove that the proffered reason is really a

pretext for discrimination or retaliation, and not the true reason for the employment decision.

*Id.* "The ultimate burden of persuading the trier of fact that the defendant intentionally

discriminated against the plaintiff remains at all times with the plaintiff. *St. Mary's Honor Ctr.*

*v. Hicks,* 509 U.S. 501, 507-508 (1993).

Here, when Rice Palace granted Boudreaux medical leave and availed herself of a right

protected under the FMLA.  Moreover, plaintiff's termination qualifies as an adverse

employment action. Plaintiff has not, however, adduced evidence that her termination can be

attributed to her taking leaves of absence for medical reasons.   Plaintiff has not established

that she was treated less favorably than a similarly situated employee who had not requested

FMLA leave, nor has plaintiff offered any direct or circumstantial evidence demonstrating a

causal connection between the adverse action, the termination of her employment, and her

FMLA leave requests.   Therefore, plaintiff simply has not sufficiently advanced her

proscriptive FMLA claims with summary judgment evidence that would establish a prima facie

case of discrimination or retaliation under the FMLA.

Assuming *arguendo* that plaintiff has established a prima facie case, she cannot survive

summary judgment because she has failed to offer any evidence rebutting defendants'

legitimate, nondiscriminatory reason for her termination.   The record indicates that prior to her

termination, plaintiff was granted medical leave when she requested it and was allowed that

leave until she furnished a physician's release clearing her to return to work.   Additionally, at

the time of her termination, Boudreaux had not requested medical leave nor does the record

show that her employer had any knowledge or indication that there was a serious medical

reason necessitating that plaintiff take additional time off or any indication that she suffered

from a serious medical condition which prevented her from performing her job duties.

The record does not provide any evidence of pretext, discrimination or retaliation other

than the plaintiff's own subjective belief and uncorroborated, conclusory allegations.  *National

Ass'n of Government Employees v. City Public Service Bd. of San Antonio, Tex.*, 40 F.3d 698,

713 (5th Cir. 1994)(Conclusory allegations unsupported by specific facts will not prevent an

award of summary judgment).  It is well established that an employee's own subjective belief

of discrimination, no matter how genuine, cannot serve as the basis for judicial relief. *Nichols*

*v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir.1996); *EEOC v. Louisiana Office of*

*Community Servs.*, 47 F.3d 1438, 1448 (5th Cir.1995); *Portis v. First Nat'l Bank of New*

*Albany,* 34 F.3d 325, 329 (5th Cir.1994). When, as here, an employee fails to adduce objective

evidence refuting the legitimate, nondiscriminatory reasons articulated by the employer, pretext

cannot be established by subjective beliefs that discrimination motivated the employer's

actions. *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir.1983).  Thus the

evidence does not suffice to present a jury question as to pretext.

In sum,  plaintiff has failed to establish a prima facie case of discrimination or

retaliation and there is no summary judgment evidence  tending to rebut defendants' legitimate,

nondiscriminatory reason for the discharge.  Accordingly, the Court will grant summary

judgment in favor of defendants on plaintiff's FMLA discrimination and/or retaliation claim

### 2.   *Violation of FMLA's Substantive Provision*

The FMLA requires covered employers to provide up to 12 weeks of unpaid leave to any

eligible employee who suffers from "a serious health condition that makes the employee

unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D);

*see Manuel v. Westlake Polymers Corp.*, 66 F.3d 758 (5th Cir.1995). After a qualifying

absence, the employer must restore the employee to the same position or a position comparable

to that held by the employee before the leave. 29 U.S.C. § 2614(a)(1). An employer may not

21

"interfere with, restrain, or deny the exercise of ... any right provided under" the FMLA. 29

U.S.C. § 2615(a)(2); *Chaffin v. John H. Carter Co., Inc.* 179 F.3d 316, 319 (5th Cir. 1999)

The Fifth Circuit has not applied the *McDonnell Douglas* burden-shifting framework

to claims brought under the prescriptive, substantive rights provisions of the FMLA. *See Hunt*

*v. Rapides Healthcare Sys., LLC,* 277 F.3d 757, 769 (5th Cir. 2001) ("The statute provides two

distinct causes of action, to which courts apply different analyses."). In *Chaffin v. John H.*

*Carter Co., Inc.,* 179 F.3d 316 (5th Cir. 1999),  the Fifth Circuit cited *Diaz v. Fort Wayne*

*Foundry Corp.,* 131 F.3d 711 (7th Cir.1997), in regard to the proper test for deprivations of

FMLA substantive rights claims.  In *Diaz,* the Seventh Circuit concluded that utilizing the

*McDonnell Douglas* approach to substantive claims under the FMLA would misdirect attention

from the proper inquiry of whether the employer respected the employee's entitlements. *Id.* at

713.  The Fifth Circuit set out that the analysis for a substantive rights claim is whether the

plaintiff has established that she is entitled to the benefit she claims.

In the case at bar it is unclear whether plaintiff has, in fact, brought a claim under the

FMLA for a statutory rights violation. In her Complaint, plaintiff appears to allege only a claim

for retaliation, although she does claim that defendants terminated her for the purpose of

denying her rights and benefits under the provisions of FMLA.  However, such claim, if being

made, is unsupported other than by the plaintiff's own subjective belief and conclusory

allegations. *National Ass'n of Government Employees v. City Public Service Bd. of San*

*Antonio, Tex.,* 40 F.3d 698, 713 (5th Cir. 1994)(Conclusory allegations unsupported by specific

22

facts will not prevent an award of summary judgment).  Again, plaintiff had not requested

medical leave a the time of termination and the record does not suggest that Rice Palace knew

that plaintiff suffered a serious health condition necessitating that prevented her from being

able to perform the functions of her position and required medical leave.

In sum, plaintiff has provided no summary judgement evidence that Rice Palace

interfered with, restrained, or denied the exercise of any right provided under the FMLA.

Plaintiff does not contend that defendants ceased paying her or denied her benefits following

her taking of medical leave.  Plaintiff did not request an additional or extended leave of

absence , nor does the record show that she ever asserted that additional leave was mandated

because her health condition rendered her "unable to perform the functions of" her position, as

necessary to qualify for FMLA leave. *See* 29 U.S.C. § 2612.  In fact, the evidence shows that

she wanted to return to work and never notified defendants that she was entitled to leave

because of a serious health condition.  Thus, plaintiff has not demonstrated the existence of a

fact issue regarding her statutory rights claim, and summary judgment is warranted.

### C.    ERISA

In her Complaint, Boudreaux contends that defendants violated ERISA § 510, 29

U.S.C.A. §1140, by improperly terminating her in order to preclude her entitlement to medical

benefits and also discriminated against her for the purpose of interfering with the attainment of

rights to which she would have become entitled under the plan, in violation of ERISA's anti-

retaliation provision, 29 U.S.C. § 1140.  Section 1140 of ERISA makes it unlawful for an

employer to:

> discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

Therefore, similar to the FMLA discussed above, Section 1140 of ERISA consists of two components: (1) an anti-retaliation component, which prohibits an employer from retaliating against an employee for exercising ERISA rights; and (2) an anti-interference component, which prohibits an employer from interfering with an employee's future rights to benefits.

Plaintiff's summary judgment burden of proof is the same as that under FMLA. To prevail on a Section 1140 claim, plaintiff must first set forth a prima facie case. *Stafford v. True Temper Sports,* 123 F.3d 291, 295 (5th Cir.1997). To establish a prima facie case under the statute, plaintiff must prove that defendants, acting with specific discriminatory intent, fired her in order to interfere with her rights under ERISA or to prevent her from gaining benefits she would otherwise be entitled to under an ERISA plan. *Id; Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755, 761 (5th Cir. 1996). Specifically, Plaintiff must show (1) an adverse employment action, (2) taken for the purpose of interfering with the attainment of, (3) any right to which the employee is entitled. *Bodine v. Employers Cas. Co.,* 352 F.3d 245, 250 (5th Cir. 2003).

Specific discriminatory intent is an essential element of plaintiff's retaliation claim. *Rogers,* 87 F.3d at 761 (citing *Hines v. Massachusetts Mutual Life Ins. Co.,* 43 F.3d 207, 209 (5th Cir.1995)). In her prima facie case, plaintiff "need not prove that the discriminatory

reason was the only reason for discharge but [s]he must show that the loss of benefits was more than an incidental loss from [her] discharge, and this inference of discrimination can be prove[d] by circumstantial evidence." *Id.*  If plaintiff proves a *prima facie* case, defendants then "must articulate a non-discriminatory reason for its actions, and then the burden shifts to [Plaintiff] to prove this reason is a pretext...." *Id.*

Based on the record, the Court concludes that plaintiff has not meet her burden of setting forth a prima facie case under Section 1140.  In her Opposition, Boudreaux does not attempt to advance her prima facie case, but instead alleges that defendants did not meet their burden of presenting evidence to contradict plaintiff's assertions that the alleged gross misconduct is a pretext.  This is not sufficient.  In her Complaint, Boudreaux makes conclusory allegations that defendants retaliated against her for requesting benefits under the Plan.  However, she has offered no competent summary judgment evidence raising a genuine issue of material fact on the essential element of her retaliation claim, namely, that defendants had specific discriminatory intent to deny her benefits under the Plan because she was exercising a right she had under the Plan or for the purpose of interfering with the attainment of any right to which she was entitled under the Plan.

Moreover, defendants have articulated a legitimate, non-discriminatory reason for terminating plaintiff, and it is the plaintiff who now has the burden of demonstrating that this reason is merely pretext for specific discriminatory intent.  Even if the Court could determine that the evidence allows for a prima facie case, defendants articulated a perfectly appropriate

25

non-discriminatory reason for its actions, and plaintiff failed to prove that this is a pretext. Plaintiff does nothing more than make bare allegations which is not sufficient to defeat summary judgment. *Stafford v. True Temper Sports,* 123 F.3d 291, 295 -296 (5th Cir., 1997). As plaintiff has not demonstrated, through competent summary judgment evidence, that defendants had a specific discriminatory intent to deny her any right or benefit to which she was entitled under the ERISA, she has not raised a genuine issue of material fact, and defendants are entitled to judgment as a matter of law on plaintiff's ERISA retaliation claim.

## V. CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment [Rec. Doc. 42] will be GRANTED in part to the extent that plaintiff's claims involve violations of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. §1140, et. seq, and the Family and Medical Leave Act of 1993 (FMLA), 19 U.S.C. §2601, et seq;  and DENIED in part to the extent that plaintiff asserts violations of the Comprehensive Omnibus Budget Reconciliation Act of 1985 (COBRA), as amended, 19 U.S.C. §1161 et seq.